SHELTON *v.* SHELTON.

Opinion delivered January 27, 1930.

*Miller & Yingling* and *Tom W. Campbell,* for appellant.

*F. E. West, Geo. W. Emerson, W. R. Donham* and *Culbert L. Pearce,* for appellee.

KIRBY, J., (after stating the facts). Appellant insists that the court erred in holding that the probate court of White County was without jurisdiction to appoint appellant administrator of the estate of Elmer Shelton, deceased, and also in adjudging him not a suitable person to act as administrator, and his removal as such and revocation of his letters on that account. Our statutes, § 5, C. & M. Digest, providing where letters of administration shall be granted, reads:

"Letters testamentary and of administration shall be granted in the county in which the testator or intestate resided; or, if he had no known residence, and the lands be devised in the will or the intestate die possessed of lands, such letters shall be granted in the county where the lands lie, or one of them if they lie in several coun-

ties; and, if the deceased had no such place of residence and no lands, such letters may be granted in the county in which the testator or intestate died, or where the greater part of his estate may be."

This court held in *Groschner* v. *Winton*, 146 Ark. 520, 226 S. W. 162, letters issued by the probate clerk of Sebastian County appointing an administrator of decedent, who had not resided nor died in that county, void. In *Krone* v. *Cooper*, 43 Ark. 547, the terms "resident" and "nonresident," used in the provisions of our statute governing attachments, were defined. In that case the court held, notwithstanding the fact that the debtor had a home or domicile in St. Louis, Mo., where his family resided, and which he was in the habit of speaking of as his home, that he was a resident of Walnut Ridge, this State, where he spent about three-fourths of his time conducting a partnership contract business in connection with his partner. It was there said: "We may conclude from the cases that, in contemplation of the attachment laws, residence implies an established abode, fixed permanently for a time, for business or other purposes, although there may be an understanding all the while to return at some time or other to the principal domicile; but so difficult is it found to provide a definition to meet all the varying phases of circumstances that the determination of this question may present, that the courts say that, subject to the general rule, each case must be decided on its own state of facts." See also *Jarrell* v. *Leeper*, 178 Ark. 8, 9 S. W. (2d) 778.

In *Smith* v. *Union County*, 178 Ark. 540, 11 S. W. (2d) 455, this court held, in construing the statute providing for the listing of property for taxation, (§ 9890, C. & M. Digest): "Residence, as used in § 9890, Crawford & Moses' Digest, means the place of actual abode, and not an established domicile or home which one expects to return to and occupy at some future time." The same construction was placed upon the word "residence" under the taxation laws as had been given it under the attach-

ment laws of the State. It will be seen from these cases, residence and domicile are not to be held synonymous; that a man may have a residence in one State or county, and he may be a nonresident of the State of his domicile in the sense that the place of his actual residence is not there. Conceding without deciding that decedent's residence followed that of his mother, into whose custody he was committed upon the divorce granted their parents, the undisputed facts show that he left this residence about two years before his death following his employment, wherever it required his residence and presence; that he afterwards married in Arkansas County, and, after his marriage and coming of age, continued to follow his employment and reside with his wife wherever it required his presence. That he had resided at Brinkley, in Monroe County, in a boarding house, it is true, for 4 or 5 weeks, where his presence was required by his services to his employer, and that he died in that county. He had not established any other residence or home after he in fact left the home of his mother and was married, except as stated; nor did he thereafter return to his old home to reside, and from which his mother, who owned a life estate therein and the right to possession thereof, had removed before his death.

The court correctly held that the decedent resided at Brinkley, in Monroe County, at the time of his death, consequently the probate court of White County was without jurisdiction to issue letters of administration upon his estate, and the court did not err in holding said letters void.

This case is not like *Easterling* v. *Farrell*, 178 Ark. 937, 12 S. W. (2d) 889, relied upon by appellant as in point and controlling here. There the undisputed testimony showed that decedent had married and established a domicile, or home, in another county after leaving the home of his father, and it was held that, for the purpose of administration on his estate, the home so established was his residence, in the absence of proof of his having estab-

lished another residence in a different State, and that the burden of proof rested upon the one who sought to have the letters of administration granted to show that he was not a resident thereof when he died.

Having come to this conclusion, it is unnecessary to determine the other point raised relative to the correctness of the court's holding upon the unfitness of the administrator.

Finding no error in the record, the judgment is affirmed.